UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| LOUIE NABONG, | : | | |
| Plaintiff, | : | Civil Action No.: | 17-0400 (RC) |
| v. | : | Re Document No.: | 8 |
| OFELIA PADDAYUMAN and<br>MARIA CRISTINA LOUISE SY, | : | | |
| Defendants. | : | | |

### MEMORANDUM OPINION

#### DENYING DEFENDANTS' MOTION TO DISMISS

## I. INTRODUCTION

Plaintiff Louie Nabong brings this action against Defendants, Ofelia Paddayuman and Maria Cristina Louise Sy alleging that Defendants lured Ms. Nabong to the United States with promises of gainful employment, but then isolated and imprisoned her, subjected her to forced labor, and otherwise threatened and mistreated her. This case now comes before the Court on Defendants' motion to dismiss the Complaint pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure for lack of venue or, in the alternative, to transfer the case to the Eastern District of Virginia pursuant to 28 U.S.C. § 1406(a). *See* Defs.' Mot. Dismiss ("Defs.' Mot."). For the reasons stated below, the Court will deny Defendants' motion.

## II. BACKGROUND[1]

In March 2014, Ms. Nabong was living and working in the Philippines when Ms. Paddayuman contacted her about potential employment in the United States. According to the

---

[1] At the motion to dismiss stage, the Court accepts the plaintiff's factual allegations as true. *See, e.g., United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).

Complaint, Ms. Paddayuman offered to employ Ms. Nabong in the United States as an "in-home caregiver of [Ms. Paddayuman's] two grandchildren," emphasizing "that Ms. Nabong's responsibilities would be limited to childcare and would not involve cleaning, laundry, or other housework." Compl. ¶ 16. Enticed by the offer, Ms. Nabong expressed interest in the position. Compl. ¶ 16. Then, a short time later, Ms. Paddayuman informed Ms. Nabong that she had been hired for the job. Compl. ¶ 16.

Ms. Paddayuman told Ms. Nabong that "she [Ms. Paddayuman] would handle most of the paperwork associated with Ms. Nabong's admission to the United States." Compl. ¶ 17. Defendants then proceeded to secure a G-5 visa for Ms. Nabong, which allows a foreign national to enter the United States as a domestic or personal employee of a foreign employee of an international organization working in the United States under a G-4 visa. Compl. ¶ 18; *See* Dep't of State, Visas for Employees of International Organizations and NATO, https://travel.state.gov/content/travel/en/us-visas/other-visa-categories/visa-employees-nato.html. Although Ms. Nabong was consistently told that she would be working for Ms. Paddayuman, throughout the visa paperwork process, Ms. Paddayuman instructed Ms. Nabong to identify Ms. Sy, a World Bank Group employee with a G-4 visa, as her employer both "on the visa" and "during [an] interview with United States embassy officials." Compl. ¶¶ 18–20. Ms. Paddayuman also provided Ms. Nabong with an employment contract prepared on a World Bank template that identified Ms. Sy as Ms. Nabong's prospective employer. *See* Compl. ¶ 22; Compl. Ex. 3, ECF No. 1-3. According to the Complaint, "the preparation of Plaintiffs' immigration and employment documents, application for and processing of Plaintiffs' G-5 visa, and [Ms.] Paddayuman's communications with [Ms. Nabong] regarding her employment and

move to the United States occurred at the International Finance Corporation, a member organization of the World Bank Group, in Washington, D.C." Compl. ¶ 8.

On February 21, 2014, Ms. Nabong received a G-5 visa and, one month later, arrived in the United States. *See* Compl. ¶¶ 18, 23. Ms. Nabong then went to live with and work for Ms. Paddayuman at Ms. Paddayuman's home in Burke, Virginia. *See* Compl. ¶¶ 9–10. Ms. Nabong alleges, however, that over the course of her employment, Ms. Paddayuman held Ms. Nabong captive through coercion and intimidation and forced her to work long hours performing housework beyond which she had originally agreed under inhumane conditions and without adequate pay. *See* Compl. ¶¶ 24–47. This treatment persisted for more than a month when, on May 6, 2014, a special agent from U.S. Immigration and Customs Enforcement removed Ms. Nabong from the home. *See* Compl. ¶ 52.

On March 6, 2017, Ms. Nabong commenced this suit against both Ms. Paddayuman and Ms. Sy asserting several claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), the Fair Labor Standards Act, Virginia labor laws, and common law claims for fraudulent misrepresentation, breach of contract, and unjust enrichment. *See* Compl. ¶¶ 55–119. Defendants responded to Ms. Nabong's complaint by moving to dismiss for lack of venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure or, in the alternative, to transfer the case to the Eastern District of Virginia pursuant to 28 U.S.C. § 1406(a). *See generally* Defs.' Mot.

### III. ANALYSIS

On a motion to dismiss for improper venue, the plaintiff bears the burden of demonstrating "proper venue with respect to each cause of action and each [defendant]." *Lamont v. Haig*, 590 F.2d 1124, 1135 (D.C. Cir. 1978); *see also Stebbins v. Nationwide Mut. Ins. Co.*, 757 F.2d 364, 366 (D.C. Cir. 1985) ("We are also puzzled by the district court's order

because it does not address separately why venue is improper as to each of the three employment discrimination claims advanced by [the plaintiff]."). But, unless contradicted by evidence, "a court should accept the plaintiff's well-pled factual allegations as true, resolve any factual conflicts in the plaintiff's favor, and draw all reasonable inferences in favor of the plaintiff." *Myers v. Holiday Inns, Inc.*, 915 F. Supp. 2d 136, 144 (D.D.C. 2013) (citing *Hunter v. Johanns*, 517 F. Supp. 2d 340, 343 (D.D.C. 2007)). However, the court need not accept a plaintiff's legal conclusions as true. *See 2215 Fifth St. Assocs. v. U–Haul Int'l, Inc.*, 148 F. Supp. 2d 50, 54 (D.D.C. 2001). If a court finds that venue is improper, it must dismiss the case or, in the interests of justice, transfer the case to a proper venue. *See* 28 U.S.C. § 1406(a).

Here, Ms. Nabong claims that venue is proper in the District of Columbia under 28 U.S.C. § 1391(b)(2), which is often referred to as the "transactional venue" provision. *See* 14D Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 3806 (4th ed. 2017). Section 1391(b)(2) provides that "a civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). "This section does not require a plaintiff to bring suit in a district where every event that supports an element of the claim occurred; rather, it merely requires a plaintiff to show that some considerable portion of the events occurred in their chosen forum." *Maysaroh Am. Arab Commc'ns & Translation Ctr., LLC*, 51 F. Supp. 3d 88, 93 (D.D.C. 2014) (citing *Modaressi v. Vedadi*, 441 F.Supp.2d 51, 57 (D.D.C. 2006)). In analyzing transactional venue, this Court must assess each of Ms. Nabong's claims individually and ascertain the facts that have "operative significance." *See e.g.*, *Lamont v. Haig*, 590 F.2d at 1134–35. For claims sounding in tort, courts typically "focus on where the allegedly tortious actions took place and where the harms were felt." 14D

Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 3806 (4th ed. 2017). For claims based on contracts, courts usually consider "where the contract was negotiated or executed, where the contract was to be performed, and where the contract was allegedly breached." *Id.* But "the site of the alleged breach weighs heavily in the venue analysis." *Elemary v. Philipp Holzmann A.G.*, 533 F. Supp. 2d 144, 150 (D.D.C. 2008). Here, Ms. Nabong argues that "a substantial part of the events" underlying her claims occurred in the District of Columbia because Ms. Paddayuman lured Ms. Nabong to the United States through communications that Ms. Paddayuman made from Washington, D.C and because her employment and immigration documents were prepared there. *See* Pl.'s Opp'n at 3; Compl. ¶ 8.

Contrary to her assertions, most of Ms. Nabong's claims concern the conditions under which she served in Virginia, rather than the fact that she was allegedly lured to the United States under false pretenses or that documents were prepared on her behalf in Washington, D.C. For example, at least four of Ms. Nabong's claims rely exclusively on the allegation that Defendants failed to adequately pay Ms. Nabong for her work in Virginia. *See generally* Compl. (Count Six (Fair Labor Standards Act violations, 29 U.S.C. §§ 206, 207, 216(b)), Counts Seven and Eight (Virginia labor law violations, Va. Code Ann. §§ 40.1-28.10, 40.1-28.12, 40.1-29), Count Ten (unjust enrichment)). Likewise, at least three of Ms. Nabong's claims under the TVPRA concern only the circumstances under which she labored in Virginia, which will succeed or fail on the merits regardless of any acts performed or events that occurred in the District.[2] *See generally*

---

[2] For example, in Count One, Ms. Nabong alleges that Defendants violated the TVPRA's peonage provision, which prohibits "holding or returning any person to a condition of peonage." Ms. Nabong claims that Ms. Paddayuman held her against her will in Virginia and subjected her to forced labor as a means of compensating Ms. Paddayuman for certain expenses. *See* Compl. ¶ 58. But the merits of this claim will turn solely upon the circumstances under which she was working in Virginia and neither Ms. Nabong's immigration documents nor the communications enticing Ms. Nabong to the United States will be of any significant import. This same rationale

Compl. (Count One (peonage, 18 U.S.C. § 1581, 1595), Count Two (sale into involuntary servitude, 18 U.S.C. §§ 1584–85), and Count Three (forced labor, 18 U.S.C. § 1589). Compl. ¶ 118. And while Ms. Nabong premises her breach of contract claim on a written document that she claims Defendants created in the District, *see* Compl. ¶¶ 8, 116, Ms. Nabong does not allege that it was executed in the District.[3] Indeed, Ms. Nabong claims that she had never seen the purported contract prior to her interview with U.S. officials and that her signature on that document was forged. Compl. ¶ 22. Moreover, even it contemplates performance in Virginia and the breaches that Ms. Nabong alleges— Ms. Paddayuman's failure to sufficiently compensate Ms. Nabong and the "inhumane working hours and working conditions"—all occurred there. Thus, §1391(b)(2) in and of itself provides no basis for venue in the District of Columbia for any of these claims. *See e.g.*, *Maysaroh*, 51 F. Supp. 3d 88, 93 (D.D.C. 2014) (holding that "the events that occurred in the District of Columbia [were] not a substantial part of the events that [gave] rise to plaintiff's claims of human trafficking for forced labor, unpaid minimum and overtime wages, and false imprisonment" when "[i]t was in Virginia that defendants allegedly forced plaintiff to work "[s]even days a week, from approximately 7:00 a.m. to 12:00 a.m." for approximately seven months, amounting to 5,232 working hours"); *Abramoff v. Shake Consulting, L.L.C.*, 288 F. Supp. 2d 1, 2–5 (D.D.C. 2003) (holding that venue in the District of Columbia was improper because "although the plaintiff signed the agreement in the District of Columbia, the 'events with operative significance' took place in Florida: the

---

applies equally to Counts Two (sale into involuntary servitude, 18 U.S.C. §§ 1584–85), and Three (forced labor, 18 U.S.C. § 1589).

[3] Ms. Nabong alleges that, in addition to the written contract, Ms. Paddayuman "orally contracted with Ms. Nabong for the childcare services." Compl. ¶ 117. The Complaint, however, fails to specify where this took place.

6

agreement contemplated performance in Florida, and the alleged breach . . . took place in Florida").

There are, however, at least some claims for which venue is proper in the District. For example, Ms. Nabong alleges that Defendants' actions constituted forced-labor trafficking, in violation of 18 U.S.C. § 1590. That statute prohibits the "knowing[] recruit[ment]" of "any person for labor or services" that violate other provisions of the TVPRA. *See* 18 U.S.C. § 1590. Although the violative labor allegedly took place in Virginia, Ms. Nabong alleges that Defendants' efforts to recruit Ms. Nabong took place in the District of Columbia. *See* Compl. ¶ 8 ([T]he preparation of [Ms. Nabong's] immigration and employment documents . . . and [Ms.] Paddayuman's communications with Plaintiff regarding her employment and move to the United States occurred . . . in Washington, D.C."). Defendants present no evidence to contradict these allegations and thus the Court must regard them as true. *See Myers*, 915 F. Supp. 2d at 144. These alleged communications also form the basis of Ms. Nabong's fraudulent misrepresentation claims. Indeed, Ms. Nabong alleges that, in these communications, Ms. Paddayuman promised generous compensation, limited job responsibilities, and reasonable working hours to induce Ms. Nabong to leave the Philippines and work in the United States, but that, in truth, Ms. Paddayuman "never intended to gainfully employ Ms. Nabong or provide her with a humane living and working environment." Compl. ¶¶ 104–05. It is well settled that, when particular communications made to or from the District of Columbia form the basis of a claim like fraud, that the communications constitute a "substantial part of the events" giving rise to the claim and that, therefore, venue in the District is proper. *See McQueen v. Woodstream Corp.*, 244 F.R.D. 26 (D.D.C. 2007) (holding that venue in the District of Columbia was proper because "[t]he communications between the parties transmitted to and from the District of Columbia were

7

critical to the defendant's alleged fraudulent undertaking."). Thus, at the very least, the District of Columbia is the proper forum for Ms. Nabong's claims of forced-labor trafficking and fraudulent misrepresentation.

Although § 1391(b) does not alone provide a basis for venue for most of Ms. Nabong's claims, she argues that venue is still "proper in this forum under the doctrine of pendent venue . . . ." Pl.'s Opp'n at 7. "The pendent venue doctrine is an exception to the general rule that 'a plaintiff must demonstrate proper venue with respect to each cause of action and each defendant.'" *Martin v. EEOC*, 19 F. Supp. 3d 291, 309 (D.D.C. 2014) (quoting *Coltrane v. Lappin*, 885 F. Supp. 2d 228, 234 (D.D.C. 2012)). Under the doctrine, "when venue lies for some of a plaintiff's claims, pendent venue may allow the court to entertain other claims that are not properly venued in the court." *Id.* "The key consideration in the exercise of pendent venue is whether the claims originate from a common nucleus of operative fact, because that test, 'in itself, embodies factors that bear upon judicial economy, convenience, and fairness.'" *Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 98 (D.D.C. 2003) (quoting *Beattie v. United States*, 756 F.2d 91, 103 (D.C. Cir. 1984), abrogated on other grounds, *Smith v. United States*, 507 U.S. 197 (1993)). "Other relevant factors to consider are the existence of common issues of proof and the existence of similar witnesses." *Id.*

In this case, the exercise of pendent venue over Ms. Nabong's claims is warranted. The Court is persuaded that there does exist a common nucleus of operative fact: namely, Ms. Nabong's alleged mistreatment at the hands of Ms. Paddayuman. Indeed, for each and every claim identified in the complaint—including the claims that are properly venued here under § 1391(b)—Ms. Nabong will be required to demonstrate that she suffered maltreatment in some form or another. Consequently, all of Ms. Nabong's claims are likely to involve common issues

of proof and many of the same witnesses. Considerations of judicial economy and convenience therefore weigh in favor of trying all of Ms. Nabong's claims together in a single action. Accordingly, the Court finds that exercising its discretion in applying the pendent venue doctrine to Ms. Nabong's remaining claims is appropriate. *See Elemary*, 533 F. Supp. 2d at 151 (D.D.C. 2008) (applying pendent venue doctrine when plaintiff's claims "will likely entail common issues of proof"); *Laffey v. Northwest Airlines*, 321 F. Supp. 1041, 1042 (D.D.C.1971) (extending pendent venue to the plaintiff's Civil Rights Act claim because venue was proper under the Equal Pay Act claim and the two separate causes of action arose out of common allegations of employment discrimination against female flight attendants). Thus, venue is proper in the District of Columbia for each of Ms. Nabong's claims under 28 U.S.C. 1391(b)(2) and the pendent venue doctrine. *See Kazenercom TOO v. Turan Petroleum, Inc.*, 590 F. Supp. 2d 153, 162 n.14 (D.D.C. 2008) ("While the Court has found that venue is possible with respect to only one of plaintiffs' fourteen claims, the remaining claims could also be heard by this Court under the doctrine of pendent venue.").

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss (ECF No. 8). An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: February 5, 2018                                              RUDOLPH CONTRERAS
                                                                     United States District Judge

9